## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DIANNA L. LEWIS,           )
                                     )
                  **Plaintiff,**       )
                                     )
vs.                              )       **Case No. 14-cv-773-TLW**
                                     )
CAROLYN W. COLVIN,      )
**Acting Commissioner of Social Security,**  )
                                     )
                  **Defendant.**     )

## OPINION AND ORDER

Plaintiff Dianna L. Lewis seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 13). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## ISSUES

On appeal, plaintiff raises two issues: (1) that the ALJ failed to give legitimate reasons for rejecting the opinion of a treating physician; and (2) that the ALJ's credibility findings are not supported by substantial evidence. (Dkt. 17).

## BACKGROUND

Plaintiff, then a 45-year old female, protectively filed for benefits under Title II on October 13, 2011, alleging a disability onset date of May 1, 2010. (R. 125-27). Plaintiff claimed that she was unable to work due to "[l]ate effects of botched hysterectomy in 2000," abdominal pain and swelling, vomiting, headaches, fever, blood in her urine and stool, bone and joint pain, depression, and swelling in her face, neck, and collarbone. (R. 151). Plaintiff's claim for benefits was denied initially on February 24, 2012, and on reconsideration on August 23, 2012. (R. 61-69, 73-75). Plaintiff then requested a hearing before an ALJ, and the ALJ held the hearing on April 1, 2013. (R. 30-60). On May 16, 2013, the ALJ issued a decision denying benefits. (R. 12-31). The Appeals Council denied plaintiff's request for review, and plaintiff appealed. (R. 1-6; dkt. 2).

### The ALJ's Decision

The ALJ found that plaintiff was insured through December 31, 2015. (R. 17). She had not engaged in any substantial gainful activity since May 1, 2010, her alleged disability onset date. Id. The ALJ found that plaintiff has severe impairments of "abdominal pain and adjustment

disorder with depressed mood." Id. Plaintiff's impairments did not meet or medically equal a listing. (R. 17-18).

The ALJ then reviewed plaintiff's testimony and the medical evidence, including medical records from treating physician Dr. Kenneth Muckala. (R. 21-23). Specifically, the ALJ discussed Dr. Muckala's "extensive outpatient testing" and hospitalization in June 2010 for testing and treatment of "abdominal pain, nausea and vomiting." (R. 21). The ALJ noted that the testing showed "efflux esophagitis, but no other pathology"; "a simple right kidney cyst"; and "adhesions from [a] prior hysterectomy," which were removed during a diagnostic laparoscopy. (R. 21-22). Plaintiff's liver had good flow, her abdomen showed no signs of malignancy, and her bowel, appendix, and colon were all normal. Id. Physical examination showed tenderness, firmness, and roundness of the abdomen. (R. 21). Despite these complaints of pain, plaintiff took only over-the-counter pain medication. (R. 22).

The ALJ determined that plaintiff retained the residual functional capacity to perform light work with additional physical and mental restrictions. (R. 20-21). In weighing the medical opinion evidence, the ALJ gave no weight to a form opinion completed by Dr. Muckala, finding that the opinion was completed "well over a year" after Dr. Muckala last examined plaintiff and finding that the limitations imposed in that opinion "are not consistent with the medical evidence of record." (R. 23). Plaintiff's past relevant work included sedentary semi-skilled and skilled office work. Id. The ALJ concluded that plaintiff was not able to perform her past relevant work due to her mental limitations, but she could perform other light, unskilled work. (R. 24). Accordingly, the ALJ determined that plaintiff was not disabled. (R. 25).

**Relevant Medical Evidence**

Plaintiff's medical records show that she began experiencing abdominal pain in late April and first sought treatment in May 2010. (R. 248-91, 293-98). Physical examinations revealed tenderness and distention. (R. 314-15). Plaintiff first underwent a colonoscopy, which was normal. (R. 289-91, 295-98, 399-400). A week later, a CT scan of the pelvis and abdomen were normal. (R. 283). The week after the CT scan, plaintiff underwent an endoscopy, which revealed only "Grade A reflux esophagitis." (R. 273-77, 402-03, 405). The physician recommended that plaintiff take Prilosec daily. (R. 277).

In early June 2010, plaintiff complained of abdominal pain with nausea and vomiting. (R. 260-64). Her treating physician, Dr. Muckala, referred her to Dr. Paul Stanton for hospitalization and testing. (R. 259-71, 406-07). Her nausea and vomiting were treated with IV fluids and medication. (R. 260). She also underwent a liver Doppler ultrasound, a "magnetic resonance angiography" of the abdomen, and a small bowel x-ray. (R. 260, 266-71). All tests were normal. (R. 260, 266-71, 407).

In a follow-up appointment with Dr. Muckala on June 14, 2010, plaintiff continued to complain of nausea, vomiting, and abdominal pain. (R. 313). She then saw Dr. Roger A. Siemens, who examined plaintiff and found that she had a "rather distended abdomen" that felt "very solid." (R. 294). Dr. Siemens declared that the examination was "still quite abnormal," despite the previous testing revealing no abnormalities, and scheduled plaintiff for a diagnostic laparoscopy. Id. Dr. Siemens conducted the laparoscopy on June 25, 2012, and found "no abnormalities noted whatsoever." (R. 251-54, 293). Other than "a few adhesions in the left lower quadrant, secondary to previous hysterectomy" and "some bands in her right and left lobe of the

liver," plaintiff's organs were normal. (R. 293). Dr. Siemens stated that he "saw no etiology surgically for the abdominal discomfort and distention that the patient has been having." Id.

Plaintiff saw Dr. Muckala again three times in July with complaints of abdominal pain. (R. 310-12). After the second visit, Dr. Muckala ordered a PET scan (R. 311), which plaintiff underwent on July 23, 2010. (R. 249-50). The PET scan was also normal. Id.

Thereafter, plaintiff saw Dr. Muckala in September 2010, February 2011, April 2011, October 2011, and November 2011. (R. 306-09, 334). Each time, she complained of nausea and abdominal pain. Id.

Plaintiff did not receive any other treatment until May 2012, reportedly due to a loss of insurance. (R. 382-93). She had several appointments for abdominal pain between May and August 2012, but each time, plaintiff refused testing or treatment. Id. The doctors noted that plaintiff exhibited signs of frustration at her continued abdominal pain. Id.

In March 2013, Dr. Muckala completed a Medical Source Statement form, in which he opined that plaintiff could only sit for three hours, stand for one hour, and walk for one hour in an eight-hour workday. (R. 394). He also opined that she would need daily unscheduled breaks lasting at least thirty minutes, that plaintiff only has "bad days," and that plaintiff would be absent from work more than four days per month. (R. 395). In response to the question regarding "objective medical testing" that supports the opinion, Dr. Muckala wrote "see previous medical records." Id.

## ANALYSIS

Plaintiff argues that the ALJ did not adequately explain his reasons for rejecting Dr. Muckala's opinion. (Dkt. 17). Specifically, plaintiff argues that the ALJ did not discuss the medical records that support his decision to give no weight to Dr. Muckala's opinion. Id.

Plaintiff also argues that the three reasons given for finding plaintiff not credible are not supported by substantial evidence in the record. Id.

**Treating Physician's Opinion**

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 F. App'x 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the

other substantial evidence in the record, treating physician opinions are still entitled to deference

and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527. Those

factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).

The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.

Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's

opinion and the reasons for that weight. See Andersen v. Astrue, 319 F. App'x 712, 717 (10th

Cir. 2009) (unpublished).[1]

In his recitation of the medical evidence, the ALJ did discuss Dr. Muckala's treatment

notes, including the results of the extensive testing that Dr. Muckala ordered. (R. 21-22). After

considering this evidence, the ALJ subsequently found that Dr. Muckala's opinion was entitled

to no weight for two reasons: (1) because the opinion, rendered in March 2013, was issued more

than a year after Dr. Muckala last examined plaintiff; and (2) because "Dr. Muckala's limitations

are not consistent with the medical evidence of record." (R. 23).

Plaintiff contends that instead of relying on Dr. Muckala's medical records, the ALJ

relied on plaintiff's mother's third-party function report to support his decision to give no weight

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

to the opinion. (Dkt. 17). Plaintiff misreads the opinion. The ALJ devotes the entire referenced paragraph to weighing all of the opinion evidence, including the agency physicians' opinion and the lay opinions in the record. (R. 23). The ALJ's references to the mother's opinions constitute a separate consideration of opinion evidence.

While the ALJ's discussion of the medical records and Dr. Muckala's opinion could be clearer, it is apparent that the ALJ considered Dr. Muckala's treatment notes and the normal findings from the extensive testing Dr. Muckala ordered in finding that Dr. Muckala's opinion was not supported by the medical evidence. See Andersen, 312 F. App'x at 717. As the Tenth Circuit has held,

> [w]here, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.

Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012). As the Court's review of the medical records, *supra*, demonstrates, the ALJ accurately cited the results of the objective medical testing. The ALJ could have referred back to his narrative discussion of the objective medical evidence. However, his failure to do so was harmless error.

## **Credibility**

Plaintiff argues that the ALJ's reasons for finding plaintiff not credible are not supported by substantial evidence. (Dkt. 17). The ALJ gave three reasons for finding plaintiff not credible: (1) plaintiff alleged disabling pain but took only over-the-counter pain medication; (2) plaintiff alleged that she spent all day in bed or in a recliner, but in her reports to the consultative examining physicians, plaintiff described "full activities of daily living"; and (3) plaintiff had a

poor work history that undermined her credibility. (R. 23). The Commissioner argues that these reasons are supported by substantial evidence in the record. (Dkt. 20).

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

**Limited Use of Pain Medication**

The record contains multiple instances in which plaintiff reported taking either no pain medication or taking only Tylenol or Advil for pain. (R. 241, 252, 339, 382). Plaintiff also refused at least one recommendation for prescription medication. (R. 387). Because the ALJ did not err in finding that plaintiff does not take pain medication, that fact is an appropriate credibility consideration, and the ALJ's finding that plaintiff's complaints of pain are not credible is supported by substantial evidence.

Plaintiff argues that she could not afford pain medication, a fact that contradicts the ALJ's findings. (Dkt. 17). However, plaintiff cites no evidence to support this claim, and the

record contains only one reference to an inability to afford medication. (R. 339). During her consultative physical examination in December 2011, the examining physician noted that plaintiff "is supposed to be taking Celexa and Phenergan but she cannot afford to get them filled." Id. However, neither of these medications treats pain. Celexa is an anti-depressant. See http://www.pdr.net/drug-summary/Celexa-citalopram-hydrobromide-1325 (last visited on March 21, 2016). Phenergan is an anti-nausea medication. See http://www.pdr.net/drug-summary/Promethazine-Hydrochloride-Injection-promethazine-hydrochloride-3471.1583    (last visited on March 21, 2016).

### Activities of Daily Living

Plaintiff also argues that the ALJ improperly relied on her activities of daily living to find her not credible. An ALJ's reliance on a claimant's activities of daily living is an appropriate consideration. See Keyes-Zachary, 695 F.3d at 1168 (holding that the lack of objectively verifiable activities of daily living is proper in a credibility finding). However, in this case, the ALJ's decision does not rely on the quality of plaintiff's activities of daily living. Instead, the ALJ found that plaintiff gave inconsistent reports regarding her activities of daily living. During the hearing, plaintiff testified that she spends "most" of her time "propped up or laying in bed" or sitting in a recliner. (R. 43). However, as the ALJ noted, plaintiff told the consultative examining physicians that she performed some household chores. (R. 338, 356). Plaintiff also reported "that she can engage in some strenuous activity by taking frequent breaks." (R. 356). The ALJ relied on these inconsistencies, which are supported by substantial evidence, in finding plaintiff not credible. Inconsistencies in a claimant's statements are a proper credibility consideration.

**Work History**

The ALJ found that plaintiff "has a poor work record, raising the question as to whether or not her continuing unemployment is actually due to a disabling condition." (R. 23). The ALJ did not identify the evidence he relied upon in reaching this conclusion. Plaintiff argues that she has a steady work history and that the ALJ erred in finding otherwise. (Dkt. 17). The Commissioner points to the years that plaintiff earned low wages as support for the ALJ's finding. (Dkt. 20).

Plaintiff's earning records reflect significant earnings in 2007-2010[2] and lower earnings in the years 2004-2006. (R. 133). Plaintiff had very low earnings for the years 2001-2002 and had only $122.50 in earnings for 2003. Id. Based on plaintiff's wages for the four years preceding her alleged disability onset date, the Court agrees with plaintiff and finds that the ALJ's reliance on this credibility factor is not supported by substantial evidence. This error, however, does not undermine the ALJ's other credibility findings. See Pickup v. Colvin, 606 F. App'x 430, 433-34 (10th Cir. 2015) (unpublished) (affirming an ALJ's credibility findings despite errors in two aspects of the analysis because "the analysis was, on balance, proper and supported by substantial evidence"); Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004) (holding that "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."). On the whole, the ALJ gave sufficient reasons to support his finding that plaintiff was not credible, and those findings are supported by substantial evidence in the record.

---

[2] In 2010, plaintiff earned $31,998.66. (R. 133). Plaintiff stopped working in early 2010, but over $10,000.00 of that income was paid in the fourth quarter. (R. 128). At the hearing, plaintiff testified that this money might have been paid-out stock options or 401K rather than wages. (R. 37-39).

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 24th day of March, 2016.

T. Lane Wilson
United States Magistrate Judge